UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

_____

FARRIS WEEKS,

                Plaintiff,

                                                                                               Case No. 20-cv-0836-bhl

     v.

CREDIT ONE BANK, et al.,

                Defendants.

_____

## DECISION AND ORDER

_____

        This is one of a number of lawsuits, filed by the same counsel, alleging breaches of a duty to report credit information accurately under the Fair Credit Reporting Act (FCRA). In this case, like the others, despite being given multiple chances, Plaintiff and counsel have had remarkable trouble identifying the specific inaccuracies they contend defendants have reported or failed to correct. The latest amended complaint offers little clue of what exactly Plaintiff thinks the defendants did wrong. Finally, in response to questions from the Court at a February 12, 2021 status conference, counsel clarified that Plaintiff's claims rest entirely on differences in how the credit reporting agencies describe the status of his client's accounts with each defendant. He argues that these (often minor) differences in the credit agencies' reports necessarily mean the defendants have willfully reported or failed to correct inaccurate information. But, even eight months after filing suit, Counsel was unable to point to any particular information in Plaintiff's credit reports that was actually inaccurate.

        From the status conference, it is clear that counsel's logic is flawed; different credit reporting agencies can describe facts related to an account differently (for example with different levels of specificity) and yet both descriptions can be accurate. Moreover, the agencies' use of different descriptions does not necessarily mean the defendants have reported or failed to correct inaccurate information about the Plaintiff's accounts. The Court need not dwell on counsel's assumptions, however, because, at the same status conference, he conceded that the differences in the reports have not actually harmed his client. This concession means that Plaintiff has

suffered no injury in fact and lacks Article III standing to pursue the claims alleged, regardless of whether the claims have merit. Accordingly, this lawsuit must be dismissed for lack of subject matter jurisdiction.

## BACKGROUND

Plaintiff filed this action on June 3, 2020, alleging that eleven defendants breached their "duty to correct and report accurate credit information to Credit Reporting Agencies" in violation of the FCRA. The initial and amended complaints were extremely sparse on details. Plaintiff simply recited the elements of an FCRA claim and alleged the defendants willfully breached duties to investigate and/or report accurate credit information, without describing the alleged breaches. In response, several defendants quickly settled. But other defendants moved to dismiss for failure to state a plausible claim, citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

At an October 30, 2020 status conference, Plaintiff's counsel related his use of a (self-described) "cookie-cutter" complaint for this and several other cases pending in the district.[1] He acknowledged that the only specific facts alleged were the names and addresses of the defendants and portions of Plaintiff's account numbers with each. (ECF Nos. 56, 58.) Because these were mere "threadbare recitals," the Court concluded that Plaintiff had failed to state a plausible claim and granted the defendants' motions to dismiss. In a minute order, the Court gave Plaintiff leave to replead and flagged missing information that, if added by amendment, would help make the claims understandable and "plausible." (ECF No. 58.)

On November 13, 2020, Plaintiff filed a second amended complaint (erroneously labelled "Plaintiff's *Third* Amended Complaint"). Plaintiff added none of the missing information suggested in the Court's minute order. In fact, the main change from Plaintiff's earlier pleading was the deletion of several more settling defendants – by this point, Plaintiff had achieved resolutions with all defendants except Celtic Bank and The Bank of Missouri. With respect to these two remaining defendants, the second amended complaint repeated Plaintiff's earlier allegations, while adding the following language:

> A. Celtic Bank Continued Inaccurate Reporting on Account 8594****** in the following ways:

---

[1] Plaintiff's counsel have filed additional substantially similar FCRA cases, three of which have been assigned to this Court: *Butler v. 1st Franklin Fin. Corp., et al.*, 20-cv-842-bhl; *Heuss v. Caliber Home Loans, Inc., et al.*, 20-cv-843-bhl; and *Herron v. Credit One Bank, et al.*, 20-cv-844-bhl.

> i. Experian:
>   - Date Last Active: 08/01/2019
> ii. Equifax:
>   - Date Last Active: 08/17/2019
> iii. TransUnion:
>   - High Balance:     $430.00
>   - Last Reported:    08/30/2019
>   - Date Last Active: 06/01/2019
>
> B. Bank of Missouri., Continued Inaccurate Reporting on Account 54278******
> in the following ways:
>   i. Experian:
>   - Past Due;        90 Days

(ECF No. 63 at ¶24.) These rather cryptic statements were the entirety of the detail provided.

To no one's surprise, both non-settling defendants responded with further motions to dismiss. (ECF Nos. 65, 67.) Plaintiff filed responses to both motions. (ECF Nos. 69, 70). After the defendants filed replies, Plaintiff sought leave to supplement the briefing with a declaration and exhibits to explain further the FCRA claims. (ECF No. 73). The Court then set a second status conference for February 12, 2021 during which it questioned Plaintiff's counsel in greater detail about his client's claims. It was only with the benefit of counsel's responses that the gist of Plaintiff's claims finally became evident.

Counsel explained that the genesis for the lawsuit was an August 21, 2019 "Credit Analyzer Report" obtained from an entity called DeleteAndRemove.com. The report identified differences concerning Plaintiff's accounts on the credit reports issued by the three primary credit reporting agencies, Experian, Equifax, and TransUnion. (ECF No. 73-2.) For example, with respect to Celtic Bank, both Experian and TransUnion show a "Last Reported" date for Plaintiff's account of "08/17/19," while Equifax reports the date as "08/01/2019."[2] Similarly, the Credit Analyzer Report shows different dates among the credit agencies for the "Date Last Active" on Plaintiff's Celtic Bank account. Experion reports an 08/01/2019 date; Equifax shows a 06/01/2019 date; and TransUnion shows 08/17/2019. (*Id.*)

On August 23, 2019, two days after receiving the Credit Analyzer Report, counsel sent dispute letters to the credit reporting agencies. The dispute letters do not identify any particular

---

[2] Even with the benefit of counsel's status conference explanation, the latest complaint remains problematic. Several of the alleged inaccuracies in "Plaintiff's [Second] Amended Complaint" do not actually match the information provided in the Credit Analyzer Report.

information as being inaccurate, and counsel did not enclose a copy of the Credit Analyzer Report, leaving the agencies to guess at the substance of Plaintiff's dispute. The letters state generically that Plaintiff had "recently been informed that there is negative information reported in the file you maintain under my Social Security number" and that Plaintiff was "challeng[ing] the accuracy, compliance and reportability of this listing." Other than listing various creditors' names and account numbers, the letters offer no explanation of any inaccuracy, noncompliance, or reportable issues that Plaintiff was disputing or wanted investigated. The letters nevertheless ask that "this [unidentified] information be immediately deleted from the credit file." They also threaten the issuance of an "online public press release" depending on the credit reporting agency's response. (ECF No. 73-3 at 2.)

Counsel chose not to send copies of the dispute letters or the Credit Analyzer Report to the defendants directly, as the FCRA allows. Instead, he waited for the credit reporting agencies to comply with their FCRA obligation to provide notice of the dispute letters to the defendants, triggering a requirement that the defendants, as providers of disputed information, also investigate the accuracy of the information they reported.[3]

The FCRA requires both credit reporting agencies and providers of disputed information to complete investigations of disputed information within 30 days of receiving a dispute letter. After this 30-day period expired, on September 28, 2019 (36 days after he sent the dispute letters to the credit reporting agencies), counsel obtained a new "Triple Bureau Credit Report." When the new report showed that some discrepancies continued, counsel decided he could file suit, although he waited another nine months before doing so. Plaintiff does not allege whether the discrepancies continued to the date of the complaint.

At the February 12, 2021 status conference, counsel was unable to tell the Court which information contained in Plaintiff's credit reports for each defendant was actually inaccurate. He

---

[3] The FCRA provides a process for consumers to dispute information contained in their credit reports. If a consumer informs the consumer reporting agency of a dispute, the agency has 30 days to either "reinvestigate" the disputed information or delete the information from the file. 15 U.S.C. §1681i(a)(1)(A). The statute requires the agency to provide notice of the disputed credit information to the person or entity who provided the information in dispute. 15 U.S.C. §1681i(a)(2). Upon receipt of that notice, the provider of the information must conduct an investigation with respect to the completeness or accuracy of the disputed information. 15 U.S.C. §1681s-2(b)(1). The results of the investigation must be reported to the consumer before expiration of the 30-day time limit provided for the credit reporting agency's "reinvestigation." 15 U.S.C. §1681s-2(b)(2). A willful failure to comply with FCRA requirements can subject a person to actual damages, statutory damages, punitive damages, and reasonable attorney's fees. 15 U.S.C. §1681n. A mere negligent failure to comply subjects a person to actual damages and reasonable attorney's fees. 15 U.S.C. §1681*o*(a).

could merely point to "discrepancies" or differences between the credit reports identified by the Credit Analyzer Report 18 months earlier. Counsel stated that he assumes that one of the reports must be inaccurate because of these differences. He also assumes that defendants must have willfully failed to report accurately or to correct inaccurate information after receiving Plaintiff's dispute letters.

Counsel then acknowledged that none of the discrepancies actually impacted Plaintiff. In fact, he confirmed that Plaintiff did not allege suffering *any* actual harm or concrete injury as a result of the "inaccurate" credit reports. Rather, he explained that the provision he is invoking is "more or less a technicality statute" and the only harm he pleaded was "statutory harm." He repeatedly admitted there were no actual damages in the case and Plaintiff does not allege suffering "any particular or concrete harm." (ECF No. 78, 79.)

## DISCUSSION

Defendants seek the dismissal of Plaintiff's latest complaint with prejudice for failure to allege a plausible claim against them. As Celtic Bank argues, despite being given the chance to replead, Plaintiff's complaint fails to allege any facts plausibly supporting the conclusion that any of the items in the credit reports are inaccurate. (ECF No. 66 at 4.) The complaint also fails to allege that Plaintiff disputed any specific inaccuracy with a credit reporting agency or that the agency notified the defendants of any disputed items. (*Id.*) In the absence of such allegations, the bank argues, Plaintiff's threadbare allegations fail to satisfy the pleading standards set in *Twombly* and *Iqbal* and the complaint should be dismissed for failure to state a claim. (*Id.* at 5.) The Bank of Missouri makes similar arguments. (ECF No. 68 at 4-5.) While defendants' arguments are compelling – Plaintiff's latest pleading effort hardly provides fair notice of the substance of Plaintiff's claims – the Court is precluded from exercising jurisdiction over and addressing the merits (or lack thereof) of Plaintiff's complaint. Counsel's admissions confirm that Plaintiff lacks standing to bring and continue this lawsuit.

### 1. Weeks Lacks Article III Standing to Pursue the Claims Alleged.

For this Court to have subject matter jurisdiction, Plaintiff must have the requisite standing to sue under Article III of the Constitution. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547-48 (2016). Even if a party does not challenge the court's subject-matter jurisdiction, the court is obliged to police the constitutional limitations on its jurisdiction. *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 278 (7th Cir. 2020). Therefore, "when a court is put on notice

that an allegation integral to standing is probably false or if the complaint 'fairly shriek[s] that there is no federal jurisdiction, the district judge must conduct whatever supplementary factual proceedings are necessary to resolve the doubt.'" *Id*. at 278 (quoting *Kanzelberger v. Kanzelberger*, 782 F.2d 774, 777 (7th Cir. 1986)).

The "'irreducible constitutional minimum' of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S. Ct. at 1547 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). The burden to establish each element is on the plaintiff. *Id*. (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990)). To meet this burden at the pleading stage, a plaintiff's complaint must contain sufficient factual allegations of an injury resulting from the defendant's conduct, accepted as true, to state a claim for relief that is plausible on its face. *Moore v. Wells Fargo Bank, N.A.*, 908 F.3d 1050, 1057 (7th Cir. 2018).

To establish injury in fact, "a plaintiff must show that she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560). A plaintiff does not automatically satisfy the injury-in-fact requirement "whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id*. at 1549. Instead, "Article III standing requires a concrete injury even in the context of a statutory violation." *Id*. In this regard, "a bare procedural violation, divorced from any concrete harm," does not satisfy the Article III requirements. *Id*.

Plaintiff alleges the defendants violated 15 U.S.C. §1681s-2(b) by failing to investigate or correct inaccurate credit information on Plaintiff's credit reports.[4] Read generously, the latest amended complaint alleges that in late September 2019 Celtic Bank continued to inaccurately report the account's Last Active date, with Experian reporting August 1, 2019, Equifax reporting August 17, 2019, and TransUnion reporting June 1, 2019. (ECF No. 63 at ¶24.) Plaintiff also alleges TransUnion reported a High Balance on the Celtic Bank account of $430.00 and a Date

---

[4] Because Plaintiff's dispute letters only provided account numbers and did not identify any specific inaccuracies, it is difficult to imagine how the creditors could have appropriately addressed Plaintiff's concerns, especially since the FCRA only requires reinvestigation of items the consumer disputes. 15 U.S.C. §1681s-2(b)(1)(A) (furnisher must "conduct an investigation with respect to the disputed information"); *see also Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005) (finding collection agency's investigation was reasonable given scant information received regarding nature of dispute).

Last Active of June 1, 2019.  Regarding the Bank of Missouri account, Plaintiff alleges Experian continued to inaccurately report a Past Due date of 90 days.

With respect to injury, Plaintiff alleges the inaccurate information was "harmful." (ECF No. 63 at ¶29.)  But Plaintiff does not allege or describe any particularized or concrete harm caused by the purportedly inaccurate information.  At the February 12 status conference, counsel explained that Plaintiff was only seeking statutory damages for alleged statutory violations under 15 U.S.C. §1681n; Plaintiff was not alleging any concrete harm due to the discrepancies.  (ECF No. 78, 79.)  Plaintiff's assertions that the defendants committed only bare procedural violations, divorced from any concrete harm, however, do not satisfy the injury-in-fact requirement of Article III.  *See Spokeo*, 136 S. Ct. at 1549.

The Seventh Circuit has repeatedly confirmed that merely identifying a violation of a consumer protection statutory right does not automatically equate to showing injury-in-fact for Article III standing purposes.  *See, e.g., Pennell v. Global Tr. Mgmt., LLC*, No. 20-1524, 2021 WL 925494 (7th Cir. Mar. 11, 2021) (allegation that dunning letter caused consumer stress and confusion failed to satisfy concreteness element of injury-in-fact requirement for Article III standing in FDCPA action); *Smith v. GC Servs. Ltd. P'ship*, 986 F.3d 708 (7th Cir. 2021) (consumer's assertion that debt-collection letter caused confusion does not allege injury sufficient to confer standing in violation of FDCPA, unless confusion leads consumer to take detrimental step); *Nettles v. Midland Funding LLC*, 983 F.3d 896 (7th Cir. 2020) (consumer failed to adequately plead injury from debt collector's alleged violations of FDCPA after debt collector sent letter overstating balance due on credit card account); *Spuhler v. State Collection Serv., Inc*., 983 F.3d 282 (7th Cir. 2020) (consumers failed to demonstrate concrete injury by alleging they received misleading collection letters that lacked statement interest was accruing in violation of FDCPA); *Larkin v. Fin. Sys. of Green Bay, Inc*., 982 F.3d 1060 (7th Cir. 2020) (no standing to assert bare procedural violation of FDCPA, such that collection letters were false or deceptive, without any other harm); *Casillas v. Madison Ave. Assocs., Inc*., 926 F.3d 329 (7th Cir. 2019) (debtor's alleged bare procedural violation of FDCPA insufficient to satisfy concreteness element for injury-in-fact requirement for Article III standing).

Nor can there be any doubt that this pleading standard applies to FCRA claims.  *See, e.g., Crabtree v. Experian Info. Sols., Inc*., 948 F.3d 872 (7th Cir. 2020) (no standing where alleged injury for unauthorized release of credit information under FCRA was too speculative and

remote); *Groshek v. Time Warner Cable, Inc*., 865 F.3d 884 (7th Cir. 2017) (job applicant alleging statutory violation without any concrete harm or risk of harm lacked standing to bring action against employers for FCRA violations); *Rivera v. Allstate Ins. Co*., 913 F.3d 603 (7th Cir. 2018) (employees lacked standing to allege former employer violated FRCA's disclosure obligations where they failed to identify resulting tangible or intangible harm).

In setting the February 12, 2021 status conference, the Court directed Plaintiff's counsel to file a brief on standing prior to the hearing. (ECF No. 74.) Counsel did not comply with the Court's order. At the hearing, counsel explained that a death in his co-counsel's family had caused both lawyers to overlook the Court's direction and asked for leave to file a brief after the hearing. Given the extenuating circumstances, the Court granted the request, while also allowing the defendants the chance to file response briefs. The Court's minute order cited the Supreme Court's *Spokeo* decision along with five Seventh Circuit decisions describing the standing requirements for consumer protection statutes, including the FCRA. (ECF No. 79.)

Despite the additional time, Plaintiff's post-hearing brief makes no attempt to fit this case within this Circuit's precedent. Plaintiff cites, in passing, two Seventh Circuit standing cases, *Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724 (7th Cir. 2016), and *Gubala v. Time Warner Cable, Inc.*, 846 F.3d 909 (7th Cir. 2017), but is silent on the five cases cited in the Court's minute order. Plaintiff focusses instead on the Ninth Circuit's decision on remand in *Robins v. Spokeo, Inc.*, 867 F.3d 1108 (9th Cir. 2017), in which that Court of Appeals considered whether the alleged FCRA violations – the defendant's publication on the internet of a credit report that falsely stated the plaintiff's age, marital status, wealth, education level, and profession, in violation of 15 U.S.C. §1681e(b) – amounted to a sufficiently concrete injury to support Article III standing. *Id*. at 1111. The plaintiff in that case alleged that the inaccuracies harmed his chances of making a favorable impression on prospective employers and that he was actively looking for a job. *Id*. at 1117. In holding that the plaintiff had standing, the Ninth Circuit emphasized that the inaccuracies in the credit report at issue had already been requested and obtained by at least one third party, and that they were of a type likely enough to cause harm to his employment prospects at a time when he was unemployed and actively looking for work. *Id*. at 1116-17.

Plaintiff's primary harm argument here is premised on a harm resulting solely from the defendants' alleged violations of 15 U.S.C. §1681n. Plaintiff asserts harm based on the

defendants having incorrectly reported Plaintiff's credit information (ECF No. 80 at 5), and their failure to "delete, modify or block the inaccurate information" on Plaintiff's credit reports (ECF No. 63 at ¶24). But Plaintiff does not allege that the misstatements in the credit reports affected Plaintiff in any way. This is fatal to Plaintiff's standing under *Spokeo* and its Seventh Circuit progeny. Plaintiff does not allege having tried to enter any transaction for which any credit report or scores were viewed or that Plaintiff planned to do so, or that any of the alleged inaccuracies would have made a difference to such a transaction. Without any allegation that an error in the credit reports harmed Plaintiff's ability to enter a transaction with a third party in the past or imminent future, Plaintiff has failed to allege a concrete injury for standing and the case must be dismissed.[5]

The dismissal of the case for lack of jurisdiction, in turn, necessitates denying the defendants' motions to dismiss, with prejudice, for failure to state a claim. *See Collier v. SP Plus Corp.*, 889 F.3d 894, 897 (7th Cir. 2018) ("A suit dismissed for lack of jurisdiction cannot *also* be dismissed 'with prejudice'; that's a disposition on the merits, which only a court with jurisdiction may render.").

### 2. Counsel Must Show Cause for Continuing this Lawsuit.

The lack of subject matter jurisdiction does not leave the Court without authority to address counsel's problematic behavior in filing and continuing this lawsuit. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395-96 (1990) ("It is well established that a federal court may consider collateral issues after an action is no longer pending.... [An] imposition of a Rule 11 sanction is not a judgment on the merits of an action. Rather, it requires the determination of a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate."). As the foregoing discussion makes clear, counsel's handling of this case is far from exemplary.

In this case (and others), counsel filed a cookie cutter complaint, alleging the very same counts, with minimal factual investigation and with minimal factual allegations specific to each named defendant. Even after the Court pointed out the deficiencies in Plaintiff's first amended

---

[5] This case underscores the importance of the standing requirement. It is highly unlikely that any of the items on Plaintiff's credit reports could possibly have resulted in harm, even if they were inaccurate. The discrepancies are all incredibly minor – the dates reported differ only modestly and the differences continued for only short periods of time. Indeed, even eight months after filing suit, counsel still cannot even identify what exactly was erroneous about the statements, an odd scenario if the statements were actually harmful.

complaint (ECF Nos. 2, 58), the second amended complaint again included only the barest of factual allegations regarding the defendants' conduct and no allegations regarding the Plaintiff's *actual* injury (ECF No. 63). Defendants and the Court received no fair notice of the substance of Plaintiff's complaint until Plaintiff supplemented the record with the Credit Analyzer Report and counsel was questioned by the Court. That questioning laid bare serious questions about the viability of Plaintiff's claims and counsel's effort to keep the lawsuit alive (as he continued negotiating settlements with other defendants). While Plaintiff's counsel should have known by this point that the allegations were insufficient to survive jurisdictional scrutiny, he pressed forward.

When the defendants filed motions to dismiss, Plaintiff's counsel filed opposition briefs with randomly changing fonts and line-spacing, suggesting they had been "cut and pasted" from other sources and were not counsel's own work product. (ECF Nos. 69, 70.) When the Court directed counsel to file a short brief explaining Plaintiff's Article III standing in light of the recent Seventh Circuit decisions, counsel failed to submit a timely brief, compelling co-counsel belatedly to request an extension. While the Court accepted counsel's representation that personal circumstances caused the failure to file the brief, and allowed additional time to comply with the order, the resulting work product again left much to be desired. Counsel cited *Spokeo*, 136 S. Ct. 1540, and a couple of Seventh Circuit cases, but the brief merely repeated the undeveloped allegation that plaintiff "suffered harm" when defendants "reported their information inaccurately," and that action "implicate[d] the Plaintiff's interests in truthful credit reporting." (ECF No. 80 at 5-6.) This conduct showed minimal effort by counsel, while wasting the Court's time and forcing the defendants to expend resources without reason.

Counsel's description of his pre-lawsuit conduct also raises questions about whether this litigation was commenced for an improper purpose. The record suggests counsel was not trying to remedy a legitimate client problem but was instead interested in setting up defendants for "technical" violations of a consumer protection statute in order to obtain statutory attorney's fees. Counsel chose to send opaque, non-specific complaint letters to the credit reporting agencies and declined to forward those vague letters to the defendants. If counsel was concerned about remedying the accuracy of his client's credit reports, providing prompt and proper notice to both the credit agencies and the defendants would have made sense. Of course, if counsel was concerned about ginning up an FCRA lawsuit to coerce settlements or secure fees, on the other

hand, it made perfect sense to use a non-specific complaint letter and to delay the forwarding of that letter to defendants, who would have less time to address any potential issues within the FCRA's tight 30-day time limit for a response.

Given all of these issues, Plaintiff's counsel is ordered to show cause in writing, by filing a brief within 14 days, explaining why the Court should not enter a sanction under Fed. R. Civ. P. 11, including awarding the defendants their reasonable attorneys' fees. The defendants may file response briefs within 14 days of service of Plaintiff's brief, detailing whether defendants believe sanctions are appropriate and, if so, what an appropriate sanction might be.

Accordingly, IT IS HEREBY ORDERED that the case is DISMISSED under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.

IT IS FURTHER ORDERED that the Motions to Dismiss, with prejudice, for Failure to State a Claim, filed by Celtic Bank and The Bank of Missouri (ECF Nos. 65, 67), are DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Leave to File Supporting Declaration and Exhibits in Support of Plaintiff's Brief Opposing Defendants' Motions to Dismiss (ECF No. 73) is GRANTED.

IT IS FURTHER ORDERED that on or before **April 12, 2021**, Plaintiff's counsel shall show cause by filing a brief explaining why the Court should not enter a sanction, including awarding defendants their reasonable attorneys' fees, under Fed. R. Civ. P. 11. Defendants may file a Response Brief within 14 days of service of Plaintiff's brief.

Dated at Milwaukee, Wisconsin this 29th day of March, 2021.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge